DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PAUL ERNEST VARCHETTI**,
Appellant,

v.

**JULIE ANNE VARCHETTI,**
Appellee.

No. 4D22-438

[January 18, 2023]

Appeal of a nonfinal order from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Janet Croom, Judge; L.T. Case No. 312019DR000482.

A. Julia Graves of Law Office of A. Julia Graves, P.A., Vero Beach, for appellant.

Kevin M. Rollin of Napier & Rollin, PLLC, Vero Beach, for appellee.

PER CURIAM.

Appellant Paul Ernest Varchetti ("the former husband") appeals from the circuit court's order awarding temporary child support to Appellee Julie Anne Varchetti ("the former wife"), raising both jurisdictional and errors-in-calculation arguments. Concluding that some of the former husband's challenges are meritorious, we reverse in part and remand with instructions that the circuit court recalculate the temporary child support due to the former wife, as set forth below, and summarily deny the former wife's request for an award of attorney's fees.

**Background**

The parties were married in Michigan and have two minor children. In 2019, the parties each filed for dissolution of marriage from their respective domiciles, the former husband in Michigan, the former wife in Florida. The parties were divorced in Michigan in 2021 after a Michigan court entered a final judgment of divorce, which incorporated and merged the parties' confidential settlement agreement ("the CSA").

Among the CSA's pertinent provisions is the requirement that the former husband pay the former wife $3,500 per month for seventy-two months "as combined spousal support and property settlement payments in the form of nonmodifiable alimony." As to child support, the CSA requires the former husband to pay $300 per month to the former wife. Additionally, the CSA contains an indemnification provision which states: "All attorney and professional fee charges that [the former wife] incurs after the date of this Agreement shall be [the former wife's] sole responsibility."

The parties' proposed Michigan final judgment of divorce incorporated the CSA's articles related to custody and parenting time (Article 2) and to child support (Article 3). However, the Michigan judge crossed out the section of the proposed final judgment incorporating those articles. Thus, those articles are not part of the Final Judgment of Divorce.

Thereafter, both the Michigan and Florida courts determined that, because the parties' children were living with the former wife in Florida, this state was the proper jurisdiction for all child custody and support issues under the Uniform Child Custody Jurisdiction and Enforcement Act. The Michigan court took no further action as to child support.

Subsequently, the former wife filed a "motion to establish initial award of temporary child support" in Florida. She requested an upward deviation to $6,688 in monthly child support, asserting that the former husband's annual income was between $600,000 and $700,000. The former husband sought a dismissal of this motion, questioning the Florida court's jurisdiction to award child support in light of the CSA, which was merged into the Michigan final judgment of divorce.

The Florida court issued an order granting the former wife's motion for temporary child support above the CSA's $300 per month. In determining that the former husband would pay monthly child support of $2,851 (plus a $28,510 arrearage), the Florida court found that the seventy-two monthly "combined spousal support and property settlement payments" constituted a distribution of marital property as opposed to alimony, thus these payments could not be considered as part of the former wife's gross income for purposes of calculating child support. In addition, the Florida court found that because the former wife was unemployed, it would impute her earning capacity as being at the minimum wage level. Finally, the Florida court's order "reserve[d] jurisdiction to determine entitlement and/or an award to [the former wife] of her reasonable attorneys' fees and costs."

The instant appeal followed.

## Analysis

"The standard of review for a child support award is abuse of discretion." *Henry v. Henry*, 191 So. 3d 995, 997 (Fla. 4th DCA 2016) (quoting *McKenna v. McKenna*, 31 So. 3d 890, 891 (Fla. 4th DCA 2010)). However, the framework which a trial court has used to calculate child support is reviewed de novo. *Waldera v. Waldera*, 306 So. 3d 1037, 1039 (Fla. 3d DCA 2020).

Initially, we find no error with the Florida court asserting jurisdiction over this matter and issuing an initial child support award rather than modifying the CSA's $300 monthly payment provision. As noted above, the Michigan court expressly indicated that the Florida court would address child custody and support issues. Moreover, the former husband failed to timely challenge the Michigan court's striking out the CSA provisions related to child custody and support in the proposed final judgment of divorce, or the Michigan and Florida courts' holdings that Florida is the appropriate jurisdiction to determine child support. Further, to the extent the former husband is challenging the Florida court having ordered significantly greater monthly child support payments than the CSA's $300 monthly payment provision, "the party seeking an increase in child support need only prove a substantial change in circumstances similar to that required in the modification of dissolution judgments which do not incorporate a settlement agreement." *Tietig v. Boggs*, 602 So. 2d 1250, 1251 (Fla. 1992).

As to the former husband's challenge to the Florida court's monthly child support calculations, we agree with the former husband that the Florida court erred in finding that the seventy-two monthly payments required by the CSA constituted distribution of marital property as opposed to alimony. Michigan Court Rule 3.211(D)(1) states that a Uniform Support Order "must accompany any order affecting child support or spousal support" and the "Uniform Support Order shall govern if the terms of the judgment or order conflict with the Uniform Support Order." Here, the Uniform Support Order stated that the seventy-two monthly payments were spousal support. Because the Uniform Support Order is controlling in this instance, the seventy-two monthly payments should be characterized as durational alimony.[1] As a result, the seventy-

---

[1] The parties were married for approximately twelve years. "[A] moderate-term marriage is a marriage having a duration of greater than 7 years but less than 17 years." § 61.08(4), Fla. Stat. (2021). "Durational alimony may be awarded . . . to

3

two monthly payments should be taken into consideration in calculating the former wife's gross income for purposes of determining child support under section 61.30, Florida Statutes. *See* § 61.30(2)(a)9., Fla. Stat. (2021) (for purposes of determining the amount of child support, a calculation of a parent's gross income should include consideration of "[s]pousal support received from a previous marriage or court ordered in the marriage before the court").

As to the former husband's challenge to the wife's income imputation, the former wife testified in the Florida court that although she was currently unemployed, she had been recently employed at a car dealership where she was earning approximately $500 per week or $2,000 per month before she had quit. Nevertheless, the Florida court imputed the former wife's earning capacity as "minimum wage." This was error. The pertinent provision of the Florida child support guidelines states:

> Monthly income shall be imputed to an unemployed or underemployed parent if such unemployment or underemployment is found by the court to be voluntary on that parent's part, absent a finding of fact by the court of physical or mental incapacity or other circumstances over which the parent has no control. *In the event of such voluntary unemployment or underemployment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community if such information is available.*

§ 61.30(2)(b), Fla. Stat. (2021) (emphasis added). Accordingly, the former wife's recent employment history should have been taken into consideration in determining her earning capacity.

The third matter requiring reconsideration relates to the in-kind contributions, payments, and reimbursements which the former wife was receiving, all of which demonstrated that her living expenses were being reduced. Pursuant to section 61.30(2)(a)13., Florida Statutes (2021), when calculating a parent's gross income for purposes of determining child support, the trial court should consider any "[r]eimbursed expenses or in[-]kind payments to the extent that they reduce living expenses." § 61.30(2)(a)13., Fla. Stat. (2021). The former wife testified that she lived with her fiancé and uncle, both of whom were providing her financial

provide a party with economic assistance for a set period of time following a marriage of short or moderate duration . . . ." § 61.08(7), Fla. Stat. (2021).

4

assistance by paying or reimbursing her for various bills, including home utilities, car payments, auto insurance, and groceries. The Florida court erred in failing to take these in-kind contributions, payments, and reimbursements into consideration in calculating the former wife's gross income.

The former husband's appeal also argues further errors existed in the Florida court's child support calculations. Finding no further errors, we affirm on these arguments without discussion.

Finally, we agree with the former husband that the Florida court erred in reserving jurisdiction to award the former wife attorney's fees. This ruling was inconsistent with the parties' CSA which explicitly stated the former wife would be solely responsible for her own attorney's fees after the settlement agreement was executed. *See Rocha v. Mendonca*, 35 So. 3d 973, 976 (Fla. 3d DCA 2010) ("Although a trial court may be motivated to do what it considers to be fair and equitable, it retains no jurisdiction to rewrite the terms of a marital settlement agreement.").

## Conclusion

As set forth above, we reverse, in part, the Florida court's temporary order awarding child support, and remand for the Florida court to make the necessary modifications consistent with this decision and to recalculate the former husband's child support obligation accordingly. Both parties are to be responsible for their own attorney's fees.

*Affirmed in part, reversed in part, and remanded with instructions.*

GERBER and KUNTZ, JJ., concur.
FORST, J., concurs in part and dissents in part with an opinion.

FORST, J., concurring in part, dissenting in part.

I concur with the determination that the Florida court had jurisdiction to calculate and impose a temporary child support order on the parties. I further concur with the determination that the Florida court erred in part in calculating the award, and therefore recalculation is appropriate, as the majority opinion directs.

However, I respectfully dissent on the attorney's fees issue. The parties did not argue this issue during the hearing on the former wife's motion to establish temporary child support, and the only mention of this issue in the Florida court's order is the statement that "[t]he Court specifically

5

reserves jurisdiction to determine entitlement and/or an award to the [former wife] of her reasonable attorneys' fees and costs pursuant to Section 61.16 of the Florida Statutes." (emphasis omitted). By its plain terms, the Florida court has not yet determined whether the former wife is "entitle[d]" to an attorney's fees award, thus this court's ruling on that matter may be premature.

Secondly, we have determined that the Florida court had jurisdiction with respect to child custody and child support matters, and we affirmed (subject to several recalculations on remand) the imposition of $2,851 monthly child support payments, notwithstanding the CSA's limiting monthly child support to $300. I contend that the Michigan court limited the reliance on the CSA to matters which did not concern child support or child custody, and relinquished jurisdiction of these matters to the Florida court in recognition that the parties' two minor children were Florida residents when their parents divorced.

The Third District Court of Appeal recently dealt with this issue, holding that "where the issue in litigation requires the trial court to determine what is in the best interests of the child, the trial court has the discretion to award attorneys' fees and costs pursuant to section 61.16, notwithstanding any agreement between the parties purporting to prospectively waive the right to seek an award of attorneys' fees and costs." *Helinski v. Helinski*, 305 So. 3d 703, 708 (Fla. 3d DCA 2020). *Helinski* relied upon this court's opinions in *Bernstein v. Bernstein*, 498 So. 2d 1270 (Fla. 4th DCA 1986), and *Engelsen v. Landers*, 699 So. 2d 1031 (Fla. 4th DCA 1997). *Helinski*, 305 So. 3d at 708.

In *Engelsen*, the parties were not married and the agreement with the attorney's fees waiver related solely to child support and custody. 699 So. 2d at 1032. Nonetheless, citing and quoting *Bernstein*, we held that "a contract dealing with child support 'will be given effect only to the extent that it is in the best interests of the child'" and that "[t]he point of *Bernstein* is that if the parents cannot contract away a court's ability to act in the best interest of their child, then they cannot contract away one party's ability to obtain an advocate to see that the full story is developed in a child related proceeding." *Id.* (quoting *Bernstein*, 498 So. 2d at 1272).

The instant case involves a CSA which was drafted to address all issues pertinent to the dissolution of marriage. However, the Michigan court struck the provisions related to child support and custody from the parties' proposed final judgment of divorce, and relinquished jurisdiction on these matters to the Florida court. Thus, the CSA's attorney's fees waiver is

6

more attenuated here than it was in *Engelsen*, where it solely related to child custody and child support matters.

Accordingly, I would not reverse the circuit court's order on the attorney's fees issue, as the CSA standing alone does not preclude an attorney's fees award.  I would thus leave it to the Florida court to address whether the *Rosen* factors entitled the former wife to an award of attorney's fees.  *See Rosen v. Rosen,* 696 So. 2d 697, 699 (Fla. 1997) ("[T]o ensure that both parties have similar access to competent legal counsel, the trial court must look to each spouse's need for suit money versus each spouse's respective ability to pay.").  On this issue, I respectfully dissent.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***